UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| UNITED STATES | ) | |
|---|---|---|
| | ) | |
| vs | ) | Case No. 1:16-CR-00245-CG |
| | ) | |
| DIONE PETITE | ) | |

## MOTION FOR COMPASSIONATE RELEASE – DEBILITATED MEDICAL CONDITION

COMES NOW, Dione Petite is an inmate incarcerated with failing health. Suffering from several chronic, debilitating and life-threatening illnesses, she respectfully asks the Court to exercise its discretion to grant a reduction in sentence for "extraordinary and compelling reasons." The Court's authority rests upon 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"). As demonstrated below, the circumstances that support Ms. Petite's "compassionate release" easily satisfies the statutory "extraordinary and compelling" test, even without considering the COVID-19 pandemic. The difficulty of controlling the spread of COVID-19 in prisons, combined with the risk that Ms. Petite will die from the virus, should she become infected, makes her application all the more compelling.

Dione Petite"s circumstances present a strong case for a compassionate reduction in her sentence at this time to another form of imprisonment, home confinement. She has been in continuous custody since her arrest in November 2016.

Research from Johns Hopkins and UCLA shows prisoners are 550% more likely to catch covid, and 300% more likely to die from it.  Reports from many institutions and media have stated that Warden's and Case Managers refuse to sign compassionate release paperwork for those that are eligible.

Beginning on or about March 1,2016, and continuing through on or about the date of the return of this indictment, in the Southern District of Alabama, Southern Division and elsewhere, the defendants, Dione Kyreme Petite,and co-defenders did willfully, knowingly and unlawfully conspire with each other, both known and unknown to distribute a Schedule

II controlled substance, to-wit: methamphetamine (actual), contrary to Title 21, United States Code, Section 841(a)(1). In violation of Title 21, United States Code, Section 846. The quantity of methamphetamine (actual) each defendant conspired with the intent to possess exceeded 50 grams; thus, the defendants are subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(a).

Ms. Petite suffers from several chronic and debilitating medical conditions that affect nearly every aspect of her daily life. These conditions, which are detailed below, include Human Immunodeficiency Virus(HIV), Asthma and she spends over 90% of her life in a wheelchair. These and other conditions from which Ms. Petite suffers,makes her health increasingly tenuous and life in prison increasingly miserable. They also place her at very high risk of death from COVID-19, should she contract it, and despite the best efforts of the Bureau of Prisons ("BOP"), the prison environment is extremely conducive to the spread of the virus. Although Ms. Petite's physical health has declined during her incarceration, her personal growth and moral character have flowered as her body deteriorated. She is deeply involved in the prison's religious community and self-development.

Ms. Petite is consistently described by the staff at Aliceville SPC, her fellow inmates, and others in the community as a kind, compassionate, generous, and sincere woman who is devoted to serving others. Those who have had the opportunity to get to know Ms. Petite, including medical professionals, stress that Ms. Petite is not a risk to any person or the community. Ms. Petite's has displayed acts of kindness and caring toward everyone she comes in contact with.

While the Court in contemplating a motion for reduction in sentence must also consider the nature of Ms. Petite's offense conduct, Ms. Petite's release, after serving 4 years, would not be outside of the mainstream.

In many ways, Dione Petite is not the same person that she was when committed to custody 4 years ago. She has become a deeply religious and moral person whose acts of kindness illustrates the strength of her character. She is suffering, badly, and is "desperate" to be reunited with her family and her loved ones.[4] Respectfully, as demonstrated below, she satisfies all the legal criteria for a reduction in sentence at this time, and her application for compassionate release is compelling.

After sentencing, Ms. Petite was admitted to Aliceville FCI in Aliceville, Alabama she has recently been transferred to Aliceville SPC due to she is a low risk, nonviolent offender with no disciplinary actions where she is currently incarcerated. She was expecting to go to FMC Carswell, a federal medical center located in Fort Worth, Texas where she could properly and adequately receive treatment for her chronic medical conditions.

Barely four years after being incarcerated at Aliceville, Ms. Petite suffers asthma, hemophilia, severe edema and hypertension.The severe hypertension and anemia which she has been prescribed an oral medication but her conditions remain unstable.  Ms. Petite has continued to experience a serious and progressive decline in both her physical and cognitive wellbeing. She also suffers from a number of chronic medical conditions that substantially inhibit her ability to provide self- care within the environment of a correctional facility. She is also diagnosed with HIV which is a debilitating disease which will lead to her death. Most notably, HIV has severely weakened her immune system which makes her easily susceptible to many illnesses and diseases, especially COVID-19. As her disease progresses, she may experience seizures, dementia, heart strain, respiratory infections, shingles, kidney damage, skin sores, difficulty eating, as well as mental and behavioral changes, sleep problems, depression, memory difficulties, and fatigue (Healthline.com) There is no cure for HIV and complications relating to the disease can be serious, to fatal. In 2019, the Centers for Disease Control and Prevention ("CDC") rated Asthma (a chronic respiratory disease) the 4th leading cause of death in the United States.

Ms. Petite's history of Asthma, Hypertension, Hemophilia and Anemia combined with her illness, HIV diagnosis make it increasingly difficult for her to go about her daily life. She frequently drops things and is disoriented by movement and noise, which is a constant issue given the conditions at Aliceville SPC, as in any prison. It is becoming increasingly weak and has fallen over 10 times, she also spends over 90% of her life in a wheelchair in which she needs assistance to get dressed, put on stockings, get her food and get from place to place in her wheelchair.

Ms. Petite is in a constant state of fatigue and finds it difficult to stay awake throughout the day. Her condition diminishes her ability to provide self-care.

In addition to the conditions discussed above, Ms. Petite has been diagnosed with a

variety of other serious and chronic medical conditions, including, but not limited to:

- HIV
- Hypertension
- Hemophilia
- Anemia
- High cholesterol
- Morbidly obese BMI >40, over 400 lbs
- Severe migraines
- Arthritis

Given Ms. Petite's legion of underlying health problems from which she suffers, she is also at extremely high risk of suffering serious, if not fatal, complications should she contract COVID-19, which has already infected a number of inmates at SPC Aliceville, one of whom has died. According to the CDC, in the United States, people with underlying health conditions— including Human Immunodeficiency Virus( HIV), Asthma, Hypertension, Obesity—are to be at an especially high risk for severe disease from COVID-19, if they become infected, as compared to people without any underlying health conditions. Notwithstanding her circumstances and the harsh conditions of her confinement, Ms. Petite has proven herself to be a model inmate and a person of good moral character. She has sustained generosity and brought positivity to others. She has no record of serious misconduct since being incarcerated and she is very highly regarded by her fellow inmates and the staff at Aliceville SPC. Moreover, Ms. Petite has devoted the past four years to self-improvement and personal growth.

Ms. Petite's conduct during her incarceration has included "numerous prosocial activities, both on an organized basis and on an informal basis. She is especially active within Aliceville SPC's  religious community.  For years, Ms. Petite has demonstrated a remarkable commitment to the spiritual growth and development of her fellow inmates. Ms. Petite is in a medical category that increases a person's risk for severe disease or death from COVID-19.

If granted compassionate release, the time Ms. Petite has left will be spent attempting

to manage her illnesses, limiting her level of pain and discomfort, continue being a positive influence on other inmates and reconnecting with her family. Ms. Petite's will be residing with her cousin Joelyn Newbury in Mobile, AL.

Ms. Newbury is eager to welcome Ms. Petite home and has agreed to take care of Ms. Petite and ensure that she has access to the best doctors and medical treatments available. Ms. Newbury has the financial means to care for Ms. Petite.

Administrative Remedies should be waived due to urgency of Ms, Petite medical circumstances and futility.

This Court, upon motion of the Director of Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

Under 18 U.S.C. 3582(c)(1)(A), courts may "reduce an inmate's term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) where "extraordinary and compelling reasons warrant release," or the prisoner's age and other factors make release appropriate. 18 U.S.C. 3582(c)(1)(A). 18 U.S.C. 3553.

Dione Petite has not exhausted her administrative remedies due to her dangerous health conditions and the urgency of the circumstances, the requirement to exhaust the administrative remedies should be waived due to futility.

 Since the enactment of the First Step Act on December 21, 2018, the BOP is no longer the gatekeeper in compassionate release cases, nor is this Court in any way bound by BOP determinations in these matters. As noted in Sester v. United States, 566 U.S. 231, 132 S.Ct. 1463, 182 L.Ed.2d 455 (2012), decisions about sentencing "should not be left to employees of the same Department of Justice that conducts the prosecution."

Under 18 U.S.C. 3582(c)(1)(A)(i), Petite must both meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a change of method or reduction of his sentence. Petite's exhaustion of the administrative process can be waived in light of the extraordinary threat posed – in his unique circumstances – by the Covid-19 pandemic. Pursuant to United States v. Sawicz, No. 08-cr-287 (ARR), 2020 WL1815851(EDNY Apr. 10, 2020), United States v. Almonte, No. 3:05-cr-58 (SRU), 2020

WL1812713 (D. Conn. Apr. 9, 2020), and United States v. Gentille, No. 19-cr-590 (KPF), 2020 WL1814158 (SDNY Apr. 9, 2020).

"Even where exhaustion is seemingly mandated by statute…..the requirement is not is not absolute." Washington v. Barr, 925 F .3d 109, 118 (2d Cir.2019) (citing McCarthy v. Madigan, 503 U.S. 140, 146-47, 1992). There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decision makers are biased or because the agency has already determined the issue." Id. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." Id at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id.

All three of these exceptions apply here. "Undue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. Finally, and obviously, Petite could be unduly prejudiced by such delay." Washington, 925 F .3d at 120-21; see also Bowen v. City of New York, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where 'the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted); Abbey v. Sullivan, 978 F .2d 37, 46 (2d Cir. 1992).

Courts have excused exhaustion of administrative remedy on futility grounds when an adverse decision would be certain, see Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F. Ed 90 (D.C. Cir. 1986) and when"resort to administrative remedies would be clearly useless." A number of other courts have also found that requiring inmates to challenge the BOP's policy regarding placement through the administrative process would be futile. See, Fagiolo v. Smith, 326 F. Supp. 2d 589, 590 (M.D. Pa. 2004), exhaustion would be futile, the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. 3624, even though it has been amended by the First Step Act.

Extraordinary and Compelling Reasons Consistent with U.S.S.G. § 1B1.13 Exist For the Reduction of Dione Petite's 10 Year Sentence to Home Confinement.

Pursuant to § 1B1.13, there are at least three extraordinary and compelling reasons warranting a sentence reduction in this case. First, Ms. Petite is "suffering from a serious physical or medical condition" and is "experiencing deteriorating physical or mental health because of the aging process that substantially diminishes" her ability to care for herself "within the environment of a correctional facility" and which is irreversible. U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), (III). Second, Ms. Petite is "at least **00 years old**...experiencing a serious deterioration in physical and mental health because of the aging process and...has served at least 4 years" of her custodial sentence. Id. § 1B1.13 cmt. n.1(B). Third, there exist in Ms. Petite's case extraordinary and compelling reasons warranting a reduction in sentence "other than, or in combination with," her serious medical condition. Id. § 1B1.13 cmt. n.1(D).

**The Court Should Find Extraordinary and Compelling Reasons Warranting a Sentence Reduction Based on Ms. Petite's Serious Medical Condition.**

As set forth above, one of the expressly identified "extraordinary and compelling reasons" recognized by the U.S. Sentencing Commission is the medical condition of the defendant. Specifically, Application Note 1(A)(ii) of § 1B1.13 states, in relevant part, that extraordinary and compelling reasons exist if the defendant is "suffering from a serious physical or medical condition...or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

Ms. Petite is suffering from HIV, asthma, hemophilia, severe edema, obesity and hypertension.The severe hypertension and anemia which she has been described as an oral medication but her conditions remain unstable.  Ms. Petite has continued to experience a serious and progressive decline in both her physical and cognitive wellbeing. She also suffers from a number of chronic medical conditions that substantially inhibit her ability to provide self- care within the environment of a correctional facility. She is also diagnosed with HIV which is a debilitating disease which will lead to her death. Most notably, HIV has severely weakened her immune system which makes her easily susceptible to many

illnesses and diseases, especially COVID-19. As the disease progresses, Ms. Petite may experience seizures, dementia, heart strain, respiratory infections, shingles, kidney damage, skin sores, difficulty eating, as well as mental and behavioral changes, sleep problems, depression, memory difficulties, and fatigue (Healthline.com) There is no cure for HIV and complications relating to the disease can be serious, to fatal.

In 2019, the Centers for Disease Control and Prevention ("CDC") rated Asthma (a chronic respiratory disease) the 4th leading cause of death in the United States.

Ms. Petite's history of Asthma, Hypertension, Hemophilia and Anemia combined with her illness HIV diagnosis make it increasingly difficult for her to go about her daily life. She frequently drops and is disoriented by movement and noise, which is a constant issue given the conditions at Aliceville SPC, as in any prison. It is becoming increasingly weak as a result of she spends over 90% of her life in a wheelchair and she needs assistance to get dressed, put on stockings, get her food and get from place to place in her wheelchair. These illnesses and diseases are irreversible and affect nearly every aspect of Ms. Petite's day-to-day life. Ms. Petite's capacity to cope with pain, as well as the manner in which she experiences pain. Ms. Petite's medical records provide ample evidence of the debilitating effects of her conditions a result, Ms. Petite now lives with chronic pain. In addition, Ms. Petite has requested a specialist, to consult for required treatment,  insight and analysis with respect to Ms. Petite's current debilitating medical condition so she can receive proper treatments and care required for prevention and complications with the diseases. Her request has been ignored and fell on death ear to the medical staff at Aliceville refuses to adequately treat her conditions to improve her health.

In addition, the pandemic threat of COVID-19 greatly diminishes the ability of any ailing and vulnerable prisoners to provide self-care in a new and additional way. See United States v. Perez, No. 17 Cr. 513-3(AT), 2020 U.S. Dist. LEXIS 57265, at *9-10 (S.D.N.Y. Apr. 1, 2020) ("Confined to a small cell where social distancing is impossible, [defendant] cannot provide self- care because he cannot protect himself from the spread of a dangerous and highly contagious virus."). Prisoners cannot self-isolate from others who may be infected, cannot maintain at least six feet of separation from others as a precaution, cannot choose

whether to wear a mask, and cannot control the cleanliness either of their immediate surroundings or of their general environment.

Courts have routinely found that extraordinary and compelling reasons exist under similar circumstances, particularly where, as here, the defendant's medical conditions require frequent monitoring, evaluation, and treatment. See, e.g., United States v. McGraw, No. 2:02-cr- 00018-LJM-CMM-01, 2019 U.S. Dist. LEXIS 78370, at *10-11 (S.D. Ind. May 9, 2019) (finding it "highly pertinent" that the defendant's medical conditions, which included chronic pain and recurring diarrhea, "require frequent monitoring, evaluation, and treatment" and determining that, "[t]aken all together,...[defendant's] chronic, serious conditions, including those that are mitigated when properly treated by medical professionals, demonstrate a substantially diminished ability to provide self-care from which he is not expected to recover"). For example, a recent decision from the District of Hawaii found extraordinary and compelling reasons justifying early release pursuant to § 3582(c)(1)(A) and § 1B1.13 of the Sentencing Guidelines where defendant was "73 years old and suffers from serious medical conditions (among them, Parkinson's Disease, asthma and diabetes) which are well-documented and serious...." United States v. Ben-Yhwh, No. 15-00830 LEK, 2020 U.S. Dist. LEXIS 65677, at *14 (D. Haw. Apr. 13, 2020). Similarly, the Southern District of Illinois recently found extraordinary and compelling reasons exist where the defendant "suffers from multiple serious physical conditions," including HIV, hypertension, and anemia, "and he can no longer care for himself." United States v. Dingle, No. 12-30098, 2020 U.S. Dist. LEXIS 68604, at *4 (C.D. Ill. Apr. 20, 2020); see also United States v. Sholler, No. 17-cr-00181-SI-1, 2020 U.S. Dist. LEXIS 86084 (N.D. Cal. May 15, 2020) (granting motion for compassionate release where defendant suffered from "Parkinson's disease, major depressive disorder, acute sinusitis, diabetes mellitus (type II), hyperlipidemia, ulcerative colitis, and COVID-19 virus infection," finding that "[b]ased on the medical records submitted,... defendant is 'suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover'" (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I))); Perez, 2020 U.S. Dist. LEXIS 57265, at *9-10 (finding defendant's "recent surgeries, and his persistent pain and vision complications"

constitute extraordinary and compelling reasons pursuant to Application Note 1(A)(ii) of §
1B1.13); United States v. Spears, No. 3:98-cr-0208-SI-22, 2019 U.S. Dist. LEXIS 177991, at
*9- 10 (D. Or. Oct. 15, 2019) ("[Defendant] is nearly 77 years old and has served more than
20 years of imprisonment. His serious, possibly terminal, health problems meet the Policy
Statement's categories of a serious medical or physical condition and a serious
deterioration in physical health because of the aging process.... His medical problems also
substantially diminish his ability to provide self-care within the environment of a correctional
facility. Accordingly, he meets the requirements of the Policy Statement's categories of
extraordinary and compelling reasons A(ii)(I), A(ii)(III)...."); United States v. Bellamy, No.
15-165(8) (JRT/LIB), 2019 U.S. Dist. LEXIS 124219, at *2, 9-10 (D. Minn. July 25, 2019)
(finding extraordinary and compelling reasons exist where defendant "has several serious
chronic illnesses," including heart problems, diabetes, and chronic kidney disease, "is
experiencing deteriorating health as a result of the aging process, is capable of only limited
self-care, and is confined to his bed or wheelchair more than 50% of his waking hours").

The Court Should Find Extraordinary and Compelling Reasons Warranting a
Sentence Reduction Based on Ms. Petite's Deteriorating Physical and Mental Health, and
Time Already Served.

And without question, she is experiencing a serious deterioration in both her physical and
mental health because of the aging process. As detailed above, Ms. Petite's physical and
mental wellbeing has been on the decline since she has been incarcerated, suffering from a
number of well-documented medical conditions, including, but not limited to, *HIV*, a virus
that attacks cells that help the body fight infection, making a person more vulnerable to
other infections and diseases; *Asthma*, is a condition in which your airways narrow and
swell and may produce extra mucus causing breathing difficulties, chest pains and is not
curable. It is a chronic respiratory, debilitating disease and if not well controlled will be fatal.
Furthermore, Ms. Petite's health will undoubtedly continue to decline in the coming years.
This is more than sufficient to establish that extraordinary and compelling reasons exist
pursuant to Application Note 1(B) of § 1B1.13. See, e.g., United States v. Davis, No. PJM
00-424-2, 2020 U.S. Dist. LEXIS 40652, at *5-6 (D. Md. Mar. 5, 2020) (finding defendant

met the definition of "extraordinary and compelling reasons" as defined by U.S.S.G. §
1B1.13 Application Note 1 where defendant "is 79 years old and reports serious
deterioration of his physical health," including having undergone multiple prostate surgeries
and being diagnosed with benign localized hyperplasia of the prostate, and "has...served
more than 10 years of his sentence"); United States v. Young, No. 2:00-cr-00002-1, 2020
U.S. Dist. LEXIS 37395, at *24 (M.D. Tenn. Mar. 4, 2020) ("[Defendant] is 72 years old and
he has served more than nineteen years of his sentence. In addition, his physical health,
although perhaps not seriously deteriorating, is nonetheless declining due to chronic
illnesses and the aging process. Most notably, he suffers from diabetes that requires
multiple daily injections. He has high cholesterol, high blood pressure, and cataracts. In
recent years he has been diagnosed with chronic kidney disease and has suffered recurrent
bouts of abdominal pain leading to significant weight loss, among other illnesses. The
[defendant's] health will no doubt continue to decline with age."); United States v. Mondaca,
No. 89-CR-0655 DMS, 2020 U.S. Dist. LEXIS 37483, at *5, 8-9 (S.D. Cal. Mar. 3, 2020)
(finding extraordinary and compelling reasons exist where defendant "is 77 years old[,]...has
served at least 10 years of his term of imprisonment" and "has a well-documented history of
serious deterioration in physical and mental health which is age-related," including benign
prostatic hypertrophy, mild- to-moderate degenerative disc disease, and decrease in
memory); Spears, 2019 U.S. Dist. LEXIS 177991, at *9-10 ("[Defendant] is nearly 77 years
old and has served more than 20 years of imprisonment. His serious, possibly terminal,
health problems meet the Policy Statement category[y] of...a serious deterioration in
physical health because of the aging process.... Accordingly, he meets the requirements of
the Policy Statement's categories of extraordinary and compelling reasons [pursuant to
Application Note 1(B)]."); United States v. Cantu-Rivera, No. H-89-204, 2019 U.S. Dist.
LEXIS 105271, at *3 (S.D. Tex. June 24, 2019) ("[Defendant] meets the age-related
definition of extraordinary and compelling circumstances in U.S.S.G.§ 1B1.13, comment[]
(n.1(B)). He is 69 years old, he is experiencing serious deterioration in physical health
because of the aging process (arthritic conditions in multiple joints, cataracts, diabetes,
prostate conditions), and he has served 30 years in prison.")

Since the enactment of the First Step Act on December 21, 2018, the BOP is no longer the gatekeeper in compassionate release cases, nor is this Court in any way bound by BOP determinations in these matters. As noted in Sester v. United States, 566 U.S. 231, 132 S.Ct. 1463, 182 L.Ed.2d 455 (2012), decisions about sentencing "should not be left to employees of the same Department of Justice that conducts the prosecution."

Under 18 U.S.C. 3582(c)(1)(A)(i), Ms. Petite  must both meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a change of method or reduction of his sentence. Ms. Petite's exhaustion of the administrative process can be waived in light of the extraordinary threat posed - in her unique circumstances - by the Covid-19 pandemic. Pursuant to United States v. Sawicz, No. 08-cr-287 (ARR), 2020 WL1815851(EDNY Apr. 10, 2020), United States v. Almonte, No. 3:05-cr-58 (SRU), 2020 WL1812713 (D. Conn. Apr. 9, 2020), and United States v. Gentille, No. 19-cr-590 (KPF), 2020 WL1814158 (SDNY Apr. 9, 2020).

"Even where exhaustion is seemingly mandated by statute…..the requirement is not is not absolute." Washington v. Barr, 925 F .3d 109, 118 (2d Cir.2019) (citing McCarthy v. Madigan, 503 U.S. 140, 146-47, 1992). There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decision makers are biased or because the agency has already determined the issue." Id. Second, "exhaustion  may be unnecessary where the administrative process would be incapable of granting adequate relief." Id at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id.

All three of these exceptions apply here. "Undue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. Finally, and obviously, Petite could be unduly prejudiced by such delay." Washington, 925 F .3d at 120-21; see also Bowen v. City of New York, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where 'the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal

quotation marks, citation, and alterations omitted); Abbey v. Sullivan, 978 F .2d 37, 46 (2d Cir. 1992).

Courts have excused exhaustion of administrative remedy on futility grounds when an adverse decision would be certain, see Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F. Ed 90 (D.C. Cir. 1986) and when"resort to administrative remedies would be clearly useless." A number of other courts have also found that requiring inmates to challenge the BOP's policy regarding placement through the administrative process would be futile. See, Fagiolo v. Smith, 326 F. Supp. 2d 589, 590 (M.D. Pa. 2004), exhaustion would be futile, the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. 3624, even though it has been amended by the First Step Act.

Application Note 1(D) of § 1B1.13 provides that "other reasons," as determined by the Director of the BOP, may constitute extraordinary and compelling reasons warranting a reduction in sentence. U.S.S.G. § 1B1.13 cmt. n.1(D). Although § 1B1.13—which has not been amended since the passage of the FSA—vests the Director of the BOP with the authority to determine when such "other reasons" might warrant a reduction in a particular case, that language is now irreconcilable with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without any response from the BOP or even if the BOP expressly decides that no reasons warrant a reduction of sentence. As such, that aspect of the commentary is not binding on courts and "a court may find, independent of any motion, determination or recommendation by the BOP director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)...." United States v. Redd, No. 1:97-cr-00006-AJT, 2020 U.S. Dist. LEXIS 45977, at *18-19 (Ed. Va. Mar. 16, 2020); see also Young, 2020 U.S. Dist. LEXIS 37395, at *15 ("[T]he dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act."); United States v. O'Bryan, No. 96-10076-03-JTM, 2020 U.S. Dist. LEXIS 29747, at *3-4 (D. Kan. Feb. 21, 2020).

In other words, following passage of the FSA, "federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons

for a sentence reduction." Young, 2020 U.S. Dist. LEXIS 37395, at *15. Accordingly, this
Court has the power to determine what constitutes extraordinary and compelling reasons for
compassionate release. See United States v. Campagna, No. 16 Cr. 78-01 (LGS), 2020
U.S. Dist. LEXIS 54401, at *8 (S.D.N.Y. Mar. 27, 2020).

Here, there are at least two additional bases for finding extraordinary and compelling
reasons warranting a sentence reduction.

First, given Ms. Petite's underlying medical conditions, Ms. Petite is at an especially high
risk of suffering serious, if not fatal, medical complications should she contract COVID-19.
Second, in light of Ms. Petite's exemplary conduct while incarcerated and of good moral
character, she is deserving of mercy.

1. COVID-19 is an Extraordinary and Compelling Reason Warranting a Sentence Reduction
Reduction

On March 11, 2020, the World Health Organization ("WHO") officially classified the
new strain of coronavirus, COVID-19, as a pandemic. Two days later, on March 13, 2020,
President Trump declared the COVID-19 outbreak a national emergency.As of May 29,
2020, COVID-19 has infected more than 5.8 million people worldwide, leading to at least
360,458 deaths. In the United States, at least 1.7 million have been infected, leading to
more than 100,000 deaths. These numbers almost certainly underrepresent the true scope
of the crisis.

In an effort to slow the spread of COVID-19, CDC guidelines recommend, among other
things, that individuals practice social distancing, wear face masks when out in public, and
frequently wash their hands with soap and water or a hand sanitizer that contains at least
60% alcohol. But given the conditions at correctional facilities, inmates are often unable to
follow these guidelines, leaving them at an especially high risk of contracting the virus. In
fact, public health experts are nearly unanimous in their opinion that incarcerated individuals
"are at special risk of infection, given their living situations," and "may also be less able to
participate in proactive measures to keep themselves safe," and "infection control is
challenging in these settings." A recent opinion piece published in the New York Times
highlights why the risk of spreading COVID-19 is so high for those who are incarcerated: "In
America's jails and prisons, people share bathrooms, laundry and eating areas. The toilets

in their cells rarely have lids. The toilet tank doubles as the sink for hand washing, tooth brushing and other hygiene. People bunked in the same cell—often as many as four—share these toilets and sinks. Meanwhile, hand sanitizer is not allowed in most prisons because of its alcohol content. Air circulation is nearly always poor. Windows rarely open; soap may only be available if you can pay for it from the commissary."

Given these conditions, it is no surprise that COVID-19 is quickly spreading through the federal prison system.

As of August 17, 2020, the BOP reported 11,294 federal inmates and 1,419 BOP staff have confirmed positive test results for COVID-19 nationwide. There have been at least 114 federal inmate deaths and at least 1 staff member death attributed to COVID-19.

As the Inspector General states, "providing adequate health care to inmates remains a challenge for the BOP," and "certain characteristics of the BOP's population heighten the challenge of providing proper care for inmates, including aging inmates, inmates with chronic illness, and inmates with mental health issues."

As a result, the BOP is particularly ill-equipped to deal with the COVID-19 crisis as it sweeps the country and devastates places like nursing homes and prisons, where aging individuals with chronic diseases live in conditions that prevent social distancing. Even federal medical centers, like FMC Carswell, are ill equipped, lacking ventilators and other resources to combat this highly contagious disease.

According to the CDC, older adults and/or those with underlying medical conditions are at a significantly higher risk of contracting and becoming seriously ill—and even dying—from COVID-19.

Additionally, preliminary reports from the CDC suggest that, in the United States, people with underlying health conditions—including Asthma, Hypertension, HIV—appear to be at an especially high risk for severe disease from COVID-19 as compared to people without any underlying health conditions. Courts have taken judicial notice of the threat posed by COVID-19 to those who are incarcerated, particularly to those who are over 65 or those with one or more underlying medical conditions. See, e.g., Ben-Yhwh, 2020 U.S. Dist. LEXIS 65677, at *10 ("Based on the Center for Disease Control and Prevention reports, the Court takes judicial notice that there is a high probability that COVID-19 will cause older adults

with one or more underlying serious medical conditions to be hospitalized and admitted to the intensive care unit...."); see also United States v. Stephens, No. 15-cr-95 (AJN), 2020 U.S. Dist. LEXIS 47846, at *3 (S.D.N.Y. Mar. 19, 2020) (noting that "inmates may be at a heightened risk of contracting COVID-19").

In light of the extraordinary risks faced by inmates like Ms. Petite in the wake of the COVID-19 public health crisis, many district courts—including the Southern District of Alabama, have found that the virus constitutes an extraordinary and compelling reason warranting a reduction in sentence.

For example, in United States v. Campagna, Judge Schofield granted compassionate release for a defendant suffering from a compromised immune system, which put him at significant risk if he were to contract COVID-19. The court found that the defendant's "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason" warranting modification of the defendant's sentence.

2020 U.S. Dist. LEXIS 54401, at *8. See also, e.g., United States v. Hernandez, No. 18 Cr. 834-04 (PAE), 2020 U.S. Dist. LEXIS 58739, at *10 (S.D.N.Y. Apr. 2, 2020) (finding "extraordinary and compelling reasons" to reduce the defendant's sentence due to defendant's asthma and the "heightened medical risk presented to [the defendant] by the COVID-19 pandemic").

Ms. Petite is powerless to take the preventative self-care measures directed by the CDC for her high-risk group to remain safe from COVID-19 infection. She cannot self-quarantine or partake in "social distancing." There are community spaces where inmates and prison staff are in close contact. Additionally, the high- density areas are precisely the kind of spaces that have caused the alarmingly high-spread rates of COVID-19 throughout the United States.

Moreover, hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content. As a result, correctional health experts worry that no matter what precautions are taken by prisons, these facilities may become incubators for COVID-19.

Given that Ms. Petite suffers from a variety of serious underlying health issues that make her exceptionally vulnerable to COVID-19, extraordinary and compelling circumstances exist to support compassionate release.

2. Ms. Petite Is Deserving of Mercy

Ms. Petite's exceptional conduct as an inmate and good moral character demonstrate that she is deserving of mercy. This factor, in combination with the other factors discussed above, constitutes an extraordinary and compelling reason warranting a reduction in Ms. Petite's sentence pursuant to Application Note 1(D) of § 1B1.13 of the Sentencing Guidelines.  See United States v. Millan, No. 91-CR-685 (LAP), 2020 U.S. Dist. LEXIS 59955, at *26 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release based, in part, on defendant's model conduct as an inmate and exceptional character); cf. Cantu-Rivera, 2019 U.S. Dist. LEXIS 105271, at *3-4 (reducing defendant's life sentence to time served based principally on "the extraordinary degree of rehabilitation [defendant] has accomplished during the 30 years he has been incarcerated," including "extensive educational achievements," "service as a teaching assistant in several prison facilities for high-school equivalency and English-as-a-Second- Language programs," and "his service in the BOP's suicide watch program, helping to care for inmates placed in solitary confinement due to suicide attempts").

It has been almost 4 years since Ms. Petite was arrested and detained in November 2016 and has proven herself to be a model inmate and a person of good moral character, as demonstrated by her "genuinely exceptional accomplishments and meritorious prison record." Millan, 2020 U.S. Dist. LEXIS 59955, at *26. Her exceptional conduct and accomplishments while incarcerated are unique and distinctively important because she engaged in these positive activities without any tangible incentive other than self-improvement, given that her life sentence meant that she could neither earn "good-time" credit nor any other sentence reduction benefit. See id. at *26-27. While incarcerated, Ms. Petite has not only sought to improve herself to the utmost extent possible, but she has also dedicated herself to the service of others. Ms. Petite has no record of serious misconduct since being incarcerated—an exceptional achievement for someone who has been incarcerated for more than two decades. She has participated in

classes and groups offered by the prison's educational, psychology and religious services; served as an informal support system and mentor to other inmates struggling with personal, medical, and substance abuse. Ms. Petite's has displayed an impressingly prosocial behavior while incarcerated. She is a prosocial person who always is willing to sit down and discuss the problems other inmates were suffering whether personal, medical, mental or physical issues.

Among her many accomplishments and good deeds over the past four years, Ms. Petite has volunteered her time helping women of Aliceville SPC struggling with self-improvement, self-development and preparing for re-entry back into society among other critical issues inmates face.

Ms. Petite has proven herself to be a good Mentor for the inmates, a good organizer, self-motivated, honest, trustworthy, reliable, respectful, and courteous person.

 Ms. Petite is very regretful for the past but very positive, having strong intention of further self-improvement, rectification and positive contribution to the outside society upon her release. Her plan is to work with a nonprofit organization to mentor kids whose parents are incarcerated.

She also has the desire to pour her life into the lives of others, especially individuals who are at risk for criminal behavior in hopes of turning their lives around by sharing her experience. She is a person of high character and moral virtue. She is very kind, compassionate and sincere.

Ms. Petite's conduct during incarceration, even struggling with her chronic and debilitating medical conditions, she always attempted to help those that she viewed as being less fortunate than herself. Ms. Petite has been able to rise above severe physical handicaps, disabilities, sickness, and distress, and yet pull herself up by her own bootstraps to challenge herself to persist to maintain the duties and responsibilities she has for her friends. She would make an excellent candidate for compassionate release and would adapt wonderfully in any community.

Over the years, Ms. Petite has had a positive impact on the lives of many of her fellow inmates.

As above demonstrates,  Ms. Petite is deserving of mercy. Accordingly,this factor, in combination with the other factors discussed above, constitutes an extraordinary and compelling reason warranting a reduction in Ms. Petite's sentence.

Ms. Petite is Not A Danger To The Safety of Any Other Person Or To The Community

Where extraordinary and compelling reasons exist, compassionate release is appropriate provided the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The factors set out in § 3142(g) include, among others: (1) "the weight of the evidence against the person"; (2) "the history and characteristics of the person, including—the person's character, physical and mental condition, family ties, employment, financial resources,...community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history"; and (3) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. §3142(g).

Despite her conviction which she is not diminishing her crime, which was undeniably wrong but  for what was not a violent crime, so there is nothing to suggest that if released today Ms. Petite would pose a danger to the safety of any person or the community. To the contrary, Ms. Petite represents a positive addition to her family and community, who are eager to welcome her back into their lives and care for her.

 If granted compassionate release, Ms. Petite's will be residing with her cousin Joelyn Newbury in Mobile, AL.

Ms. Newbury is eager to welcome Ms. Petite home and has agreed to take care of Ms. Petite and ensure that she has access to the best doctors and medical treatments available. Ms. Newbury has the financial means to care for Ms. Petite.

 Ms. Newbury has agreed to care for her ailing sister and will ensure that Ms. Petite has access to the best doctors and medical treatments available. She will take Ms. Petite to her doctors' appointments, and she will make sure Ms. Petite is cared for daily.The fact that Ms. Petite, after many years, still maintains close ties with Ms. Newbury and, should She is released, intends to live with Ms. Newbury which weighs in favor of finding that Ms. Petite does not pose a danger to any other person or to the community. See Davis, 2020 U.S. Dist. LEXIS 40652, at *6-7 (D. Md. Mar. 5, 2020) (finding it unlikely that defendant

would recidivate based, in part, on the fact defendant "intends to reside in Miami with his former wife, surrounded by a community of friends"); Cantu-Rivera, 2019 U.S. Dist. LEXIS 105271, at \*5 (finding the defendant did not present a danger to the safety of any other person or to the community based, in part, on "the extensive and close ties that [defendant] maintains with his family and community").

Moreover, Ms. Petite's personal history demonstrates that, prior to her incarceration, she was a devoted member of Holy Church of God, Pastor William Bettes, in Mobile, AL. She plans to continue her participation in her Church and become a respected leader advocate in her community and her conduct during her more than 4 years in prison is overwhelmingly positive and reflective of her good moral character. Cf. Redd, 2020 U.S. Dist. LEXIS 45977, at \*23-24.

Despite her sentence, Ms. Petite has devoted herself over the past four years to self-improvement and personal growth.

In many ways, Ms. Petite is not the same person that she was when she was committed to custody 4 years ago. She has gone through a genuine transformation over the years into a woman of sound judgment, selfless behavior, and sincere efforts to modify her own views to accommodate others.... She has matured and evolved over the years and has grown in sympathy, sensitivity, and understanding.

She has no thoughts nor has she engaged in any behaviors since incarcerated that would indicate her being a risk of harm to others nor does she pose any risk to recidivate and has only the tendency to deter from any criminal activity.

Upon Consideration Of The 18 U.S.C. § 3553(a) Factors, Dione Petite'S Time Already Served Is Sufficient But Not Greater Than Necessary To Accomplish The Goals Of Sentencing.

Finally, to decide whether a sentence reduction is "warranted" by the "extraordinary and compelling reasons" that apply, the Court must also "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" to determine whether a reduced sentence is appropriate and, if so, what the sentence should be. 18 U.S.C. § 3582(c)(1)(A). Those factors include, among others: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed...to

provide just punishment for the offense[,]...to afford adequate deterrence to criminal conduct[,]...to protect the public from further crimes of the defendant[,] and...to provide the defendant with needed...medical care...in the most effective manner"; (3) "the kinds of sentences available"; and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). "Importantly, these considerations are to be assessed against the overarching principle that a sentence is to be sufficient, but not greater than necessary, for these purposes." Redd, 2020 U.S. Dist. LEXIS 45977, at *20; Davis, 2020 U.S. Dist. LEXIS 40652, at *8. The balance of the § 3553(a) factors supports granting compassionate release.

Courts weighing § 3553(a) factors have granted release to defendants with convictions for serious crimes and with histories of violence, finding that changed health circumstances, aging defendants, post-offense rehabilitation, and carefully crafted conditions of supervised release ameliorate any public safety concerns. In United States v. Bailey, for example, the defendant was sentenced to 30 years for "an extensive racketeering scheme," including a specific finding that the defendant committed offenses relating to a murder. United States v. Bailey, No. 94-cr-481 (N.D. Ill. July 24, 2019) (slip op. at 1).The defendant, who was almost 90 years old, suffered from multiple health issues and had served 25 years of his sentence. Id. The government opposed release under the § 3553(a) factors due to the "reprehensible nature of the offense." Id. Although the court acknowledged the defendant's criminal history and serious offense conduct, it found that more recent factors weighed in favor of compassionate release, including the defendant's institutional adjustment, lack of disciplinary infractions, the amount of time served, and his advanced age. Id. In weighing these more recent favorable factors over the defendant's criminal history, the court granted the reduced sentencing request, concluding that release at this stage in the defendant's life would not minimize the severity of the offense. The court observed: "[W]hether the Defendant serves 25 or 25 ½ years, he will have spent a very long time in prison, and appropriately so, for very serious offenses." Id. at 2.

In United States v. Asaro, No. 17-cr-127 (ARR), 2020 U.S. Dist. LEXIS 68044

(E.D.N.Y. Apr. 17, 2020), Judge Ross granted a sentence reduction to time served to an 84-year- old career Mafioso, despite a history of violent crimes of the greatest seriousness, including murder of a witness. Id. at *2. Asaro had served about half of a 96-month sentence for yet another violent crime, committed while more than 75. The defendant in that case, had suffered a stroke while incarcerated which substantially impaired his ability to provide self-care, and had numerous other age-related ailments. Id. at *3. On consideration of the heightened risks from COVID-19, the Court granted his compassionate release motion, over adamant government objection. See id. at *16.

In a District of Oregon case, the court likewise granted compassionate release to a defendant serving a 30-year sentence for leading a "major drug conspiracy." Spears, 2019 U.S. Dist. LEXIS 177991, at *13. As explained in the court's opinion, the defendant's history included crimes of violence, his performance on supervised release had been poor, and he committed the last serious offense for which he was serving time when he was in his fifties. Id. at *12-13. Despite these findings, the district court found that the defendant was now 76 years old and suffered from "multiple chronic serious medical conditions and limited life expectancy." Id. at *3. Although the government maintained that the defendant remained dangerous, the court disagreed, concluding that, in light of the defendant's strong family support, the age of his prior convictions, and his diminished physical condition, "appropriate supervision conditions can mitigate any limited risk" to public safety and provide sufficient specific deterrence. Id. at *15.

Similarly, in United States v. McGraw, the court granted compassionate release from the defendant's life sentence for a drug trafficking conspiracy based principally on the defendant's serious health concerns and diminished ability to provide self-care. The defendant, who was approximately 55 years old at the time of the offense and had been in custody for nearly 17 years, was now 72 years old and suffered from limited mobility, diabetes, chronic pain, chronic kidney disease, and hypertension. 2019 U.S. Dist. LEXIS 78370, at *3. The government argued that the defendant remained a danger to the community because of his leadership in a notorious motorcycle gang, the Diablos Motorcycle Club, noting that he could continue his criminal activity with simple access to a telephone. Id. at *11, 14. The court, however, concluded that given defendant's frail health,

his positive record at the institution, and the ability of the court to impose conditions that would reasonably assure the safety of the community upon release, the more flexible compassionate release statute, as amended by the FSA, favored granting defendant's motion. Id. at *15-16. The court found that, under the circumstances, defendant's time already served was sufficient:

> But further incarceration is not needed to deter [defendant] from further offenses; nor, for the reasons described above, is it necessary to protect the public from future crimes. Finally, [defendant] has served much of his sentence while seriously ill and in physical discomfort. This means that his sentence has been significantly more laborious than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2).

The cases cited above amply demonstrate that Ms. Petite's age, advanced frail medical condition, and exemplary conduct as an inmate all weigh in favor of compassionate release. Ms. Petite's sentence has been "significantly more laborious than that served by most inmates," as it has been marred by extreme pain, side effects, and difficulty partaking in normal activities. Id. at *15-16. Moreover, given her underlying medical conditions, she is at an extremely high risk of serious illness or death should she contract COVID-19, which has already infected several Aliceville SPC inmates.

Notwithstanding her circumstances and the harsh conditions of her confinement, Ms. Petite has proven herself to be a model inmate and a person of good moral character.
 Ms. Petite has no record of serious misconduct since being incarcerated and she is highly regarded by her fellow inmates and the staff at Aliceville SPC. She has presented herself to be a kind, compassionate, generous, and sincere woman.
 Ms. Petite "has proven herself to be a good Mentor for the inmates, a good organizer, self-motivated, honest, trustworthy, reliable, respectful, and courteous person.
During the years, Ms. Petite has always attempted to help those she viewed as being less fortunate than herself. In this regard, she would often spend time talking with other inmates suffering with personal, medical, mental or physical issues.

Ms. Petite has devoted the past four years to self-improvement and personal growth,

demonstrating that, in many ways, Ms. Petite is not the same person that she was when committed to custody 4 years ago.

Cf. Millan, 2020 U.S. Dist. LEXIS 59955, at *26

("[Defendant] is no longer the immature and irresponsible young man who committed his offenses in his early 20s.... In the almost three decades that have passed since he was arrested (and detained) in 1991, and despite having had no realistic hope of release, [defendant] has done everything in his power to rehabilitate himself, as demonstrated by his genuinely exceptional accomplishments and meritorious prison record."). Under these circumstances, further incarceration "would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)." McGraw, 2019 U.S. Dist. LEXIS 78370, at *16.

The need to provide adequate medical care in the most effective manner also now weighs heavily in favor of allowing Ms. Petite to seek medical treatment outside the confines of the BOP.

See 18 U.S.C. § 3553(a)(2)(D); see also Sholler, 2020 U.S. Dist. LEXIS 86084, at *13 ("The Court has considered the applicable sentencing factors from 18 U.S.C. § 3553(a) and finds that they are consistent with granting defendant's motion for compassionate release. Among other considerations, the 'need . . . to provide the defendant with needed . . . medical care . . . in the most effective manner' weighs in favor of early release." (quoting 18 U.S.C. § 3553(a)(2)(D))).

Commentators have found significant issues with the BOP's provision of medical care services, noting, in particular, pervasive medical staffing shortages and treatment delays. See. United States v. Angela Beck, 1:13-CR-186-6, U.S. District Court, (Middle District of North Carolina 2109). This facility Aliceville has numerous cases of medical neglect and medical malpractice filed against them in lawsuits.

 Even the Inspector General has noted that "providing adequate health care for inmates remains a challenge for the BOP," and "certain characteristics of the BOP's population heighten the challenge of providing proper care for inmates, including aging inmates, inmates with chronic illness, and inmates with mental health issues." These issues are especially concerning in the wake of the COVID-19 public health crisis. As an inmate, Ms.

Petite is not entitled to the doctor of her choosing. She cannot schedule timely appointments and it is difficult for her to receive much- needed treatments to mitigate and slow the progression of her illnesses. She has been delayed several necessary medical treatments, based on her prior negative experiences and concerns regarding the quality of treatment options available to her as an inmate at Aliceville SPC. See. USA vs. Angela Michelle Beck, 1:13-CR-186-6, Middle District North Carolina (June 28, 2019).  If granted compassionate release, Ms.Petite would have the option to explore different treatments to address her illnesses and find medical professionals that present a lower risk of post-treatment complications. The issue of choosing a doctor to provide care has been previously found by at least one district court to be an appropriate factor in granting a request for compassionate release made by the BOP. United States v. DiMasi, 220 F. Supp. 3d 173, 177 (D. Mass. 2016) ("Inmates have a constitutional right to adequate medical care. They do not have a right to optimal medical care or to the doctors of their choice. While on Supervised Release, [defendant] will have the liberty of selecting the doctors and hospitals he wants to treat him, and will have the opportunity to obtain what may be better medical care than he would if he remained in custody.").

As noted, if granted compassionate release, Ms. Petite's will reside with her cousin Ms. Joelyn Newbury and she will ensure that Ms. Petite has access to the best medical care available.  Ms. Newbury has the financial means to be able to provide Ms. Petite with a higher quality of care than that which is available at Aliceville SPC. The fact that treatment in the community would be more efficient, timely, and less burdensome on the BOP's medical costs also weighs heavily in favor of reducing Ms. Petite's sentence. Additionally Ms. Petite's frail condition demonstrates that Ms. Petite is unlikely to reoffend and does not pose a danger to the community. Courts have repeatedly recognized that inmates in Ms. Petite's age group are the least likely to recidivate. See, e.g., Redd, 2020 U.S. Dist. LEXIS 45977, at *23 (noting that a 64-year-old defendant is "statistically unlikely to recidivate"); Mondaca, 2020 U.S. Dist. LEXIS 37483, at *15 ("Defendant is 77 years old and in the class of prisoners least likely to recidivate."). Ms. Petite's physical and mental condition show that the aging process will now limit her engagement in anything that could present a danger. McGraw, 2019 U.S. Dist. LEXIS 78370, at *13 (reducing defendant's life sentence to time

served based principally on his serious medical conditions, even though he had a long criminal history and had occupied a leadership position in the Diablos motorcycle gang, noting that defendant's "frail condition...demonstrates that there are conditions the Court could impose to 'reasonably assure...the safety of any other person and the community'"); United States v. Brittner, No. CR 16-15-M-DLC, 2019 U.S. Dist. LEXIS 73653, at *9 (D. Mont. May 1, 2019) ("[T]he Court is convinced that [defendant] poses no safety risk to the community. [Defendant] is in an advanced stage of cancer and is wheelchair bound. He is fatigued, weak, and his memory continues to worsen.").

Finally, Ms. Petite's release, after serving 4 years, would not be outside of the mainstream, nor would it minimize the severity of the offense. In terms of "sentences available," § 3553(a)(3). And, in fact, "the need to avoid unwarranted sentence disparities," as provided in § 3553(a)(6), actually weighs in favor of compassionate release in this case.

Ms. Petite's time already served "is also a period of time that promotes respect for the law and provides just punishment." Id. at *20-21.

Now during her ailing health conditions, if granted compassionate release, the time Ms. Petite has left will be spent attempting to manage her illnesses, limiting her level of pain and discomfort, and reconnecting with her family. For the reasons detailed above, the § 3553(a) factors weigh in favor of finding that Ms. Petite' s time already served is sufficient and that further incarceration would be greater than necessary to accomplish the goals of sentencing. For all these reasons, a reduction in sentence for the extraordinary and compelling reasons that exist in this case would be "warrant[ ed]."

For the foregoing reasons, extraordinary and compelling reasons exist that warrant reduction of defendant Dione Petite's sentence. She therefore respectfully requests that the Court grant a reduction in sentence to time served and set a term of supervised release accordingly. Moreover, in light of the nature of this request and Ms. Petite's condition, the Court is respectfully requested to expedite the consideration of this motion to the extent possible.

Respectfully Submitted on 4th of September 2020.

Dione Petite No. 12611-003

UCC 1-308

Aliceville Satellite Prison Camp

P.O. Box 487

Aliceville, AL 35442

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury under the laws of the United States of America
pursuant to 28 U.S.C. 1746 that I have served a true and correct copy of the foregoing:

- Motion for Expedited Compassionate Release is served upon the following address(es)
  by placing same in sealed envelope, bearing sufficient postage for delivery via US Postal
  service FIRST CLASS MAIL to:

United States Clerk of Court                   United States Attorney Office
US District Court Southern District Of Alabama  63 Royal Street #600
155 Street Joseph Street                       Mobile, Alabama 36602
Mobile, Alabama 36602

Dated: September 4th, 2020

Dione Petite Reg. #12611-003
Without prejudice UCC 1-308
Aliceville Satellite Prison Camp
P.O. Box 487
Aliceville, Alabama 35442

 **Centers for Disease Control and Prevention**

# Coronavirus Disease

 MENU >



WEAR A MASK. PROTECT OTHERS.

# People with Certain Medical Conditions
# People with Certain Medical Conditions

Updated Sept. 11, 2020



## Summary of Recent Changes

Revisions were made on July 17, 2020 to reflect recent data supporting increased risk of severe COVID-19 among individuals with cancer. The listed underlying medical conditions in children were also revised to indicate that these conditions **might** increase risk to better reflect the quality of available data currently. We are learning more about COVID-19 every day, and as new information becomes available, CDC will update the information below.

People of any age with **certain underlying medical conditions** are at increased risk for severe illness from COVID-19:

People of any age with the following conditions **are at increased risk** of severe illness from COVID-19:

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 or higher)
- Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Sickle cell disease
- Type 2 diabetes mellitus

COVID-19 is a new disease. Currently there are limited data and information about the impact of underlying medical conditions and whether they increase the risk for severe illness from COVID-19. Based on what we know at this time, people with the following conditions **might be at an increased risk** for severe illness from COVID-19:

- Asthma (moderate-to-severe)
- Cerebrovascular disease (affects blood vessels and blood supply to the brain)
- Cystic fibrosis
- Hypertension or high blood pressure
- Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines
- Neurologic conditions, such as dementia
- Liver disease
- Pregnancy
- Pulmonary fibrosis (having damaged or scarred lung tissues)
- Smoking
- Thalassemia (a type of blood disorder)
- Type 1 diabetes mellitus

Want to see the evidence behind these lists?

Children who have medical complexity, who have neurologic, genetic, metabolic conditions, or who have congenital heart disease might be at increased risk for severe illness from COVID-19 compared to other children.

The list of underlying conditions is meant to inform clinicians to help them provide the best care possible for patients, and to inform individuals as to what their level of risk may be so they can make individual decisions about illness prevention. We are learning more about COVID-19 every day. This list is a living document that may be updated at any time, subject to potentially rapid change as the science evolves.

# Reduce your risk of getting COVID-19

It is especially important for people at increased risk of severe illness from COVID-19, and those who live with them, to protect themselves from getting COVID-19.

The best way to protect yourself and to help reduce the spread of the virus that causes COVID-19 is to:

- Limit your interactions with other people as much as possible.
- *Take precautions to prevent getting COVID-19 when you do interact with others.*

If you start feeling sick and think you may have COVID-19, get in touch with your healthcare provider within 24 hours.

# Venturing out into a public setting? What to consider before you go.

As communities and businesses across the United States are opening, you may be thinking about resuming some activities, running errands, and attending events and gatherings. **There is no way to ensure you have zero risk of infection,** so it is important to understand the risks and know how to be as safe as possible.

**Immunocompromised state (weakened immune system) from blood, bone marrow, or organ transplant; HIV; use of corticosteroids; or use of other immune weakening medicines**

**Many conditions and treatments can cause a person to be immunocompromised or have a weakened immune system. These include: having a solid organ transplant, blood, or bone marrow transplant;** immune deficiencies**;** HIV **with a low CD4 cell count or not on HIV treatment; prolonged use of corticosteroids; or use of other immune weakening medicines. Having a weakened immune system may increase your risk of severe illness from COVID-19.**

Dione Petite #12611-003
Aliceville SPC
P.O. Box 487
Aliceville, AL 35442




U.S. POSTAGE PAID
FCM LG ENV
CATAULA, GA
31804
SEP 12, 20
AMOUNT
$2.00
R2305H127610-05
1000        36602

United States Clerk of Court
U.S. District Court
155 Street Joseph Street
Mobile, AL 36602